UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
VICTOR E. VALDERRAMA, JR.,

              Plaintiff,

           - against -

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-5865 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Victor Valderrama brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") to deny his claim for Supplemental Security Income ("SSI"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 15, 20.) Plaintiff seeks reversal of the Commissioner's decision and an immediate award of benefits, or alternatively, remand for further administrative proceedings. The Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the reasons that follow, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. This case is remanded for further proceedings consistent with this Order.

## BACKGROUND

**I.    PROCEDURAL HISTORY**

      On April 9, 2014, Plaintiff filed an application for SSI, alleging disability beginning on September 11, 2005. (Administrative Transcript ("Tr."), Dkt. 8, at ECF 22, 44.)[1] On August 8, 2014, his application was initially denied. (*Id.*) After requesting a hearing on September 8, 2014

---

[1] "ECF" refers to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

(*id.* at ECF 22), Plaintiff appeared before Administrative Law Judge Lori Romeo ("the ALJ") on December 19, 2016 (*id.* at ECF 40–69). In a decision dated January 11, 2017, the ALJ determined that Plaintiff was not disabled and was therefore not entitled to SSI. (*Id.* at ECF 22–35.) On September 15, 2017, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the ALJ's decision. (*Id.* at ECF 5–11.) Plaintiff timely commenced this action on October 4, 2017. (Complaint, Dkt. 1.)

## II. THE ALJ DECISION

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 9, 2014 and that Plaintiff suffered from the following severe impairments: (1) an affective disorder characterized initially as major depression and, more recently, as bipolar I disorder; and (2) substance abuse disorder. (Tr., Dkt. 8, at ECF 24–26.)

Having determined that Plaintiff satisfied his burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments

meet or equal one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 CFR § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. In this case, the ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr., Dkt. 8, at ECF 26–28.) Moving on to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform "a full range of work at all exertional levels," but with certain "nonexertional limitations," namely: "he is limited to routine tasks in which the person would not have to work with the public, and have only casual and occasional contact with co-workers, and no over-the-shoulder supervision." (Tr., Dkt. 8, at ECF 28–34.)

Relying on her RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work as "a messenger, hot walker (cooling down racehorses after practice), security guard, [or] construction laborer." (*Id.* at ECF 34.) The ALJ then proceeded to step five. At step five, the ALJ must determine whether the claimant—given his RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing, namely:

> (1) cleaner II, job code 919.687-014, classified as [Specific Vocational Profile ('SVP')] 1 work at the medium level of exertion, of which there are 40,000 jobs nationally; (2) ironer, job code 590.685-042, classified as SVP 2 work at the light exertional level, of which there are 18,000 jobs; and (3) fusing machine feeder, job code 583.686-014, which is classified as SVP I work at the light level of exertion, of which there are 7,000 jobs in the national economy.

---

[2] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1).

3

(Tr., Dkt. 8, at ECF 35.)

## DISCUSSION

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quotations and brackets omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

Plaintiff argues that the Commissioner's decision was not supported by substantial evidence and that the ALJ failed to apply the relevant legal standards. (Plaintiff's Motion for Judgment on the Pleadings, Dkt. 16, at ECF 5.) Specifically, Plaintiff argues that the ALJ erred in disregarding the medical reports of Plaintiff's treating psychiatrist, Dr. Donn Weidershine,[3] and

---

[3] The Court notes that the spelling of Dr. Weidershine's name is inconsistent throughout the parties' briefing as well as within the Administrative Transcript itself. (*Compare* Tr., at ECF 4 ("Weidershine"), *with id.*, at ECF 29 ("Wiedershine").) The Court determines that "Weidershine" is the correct spelling, as this is the spelling Dr. Weidershine himself used in signing the letter he sent to Plaintiff's Counsel. (*Id.*, at ECF 491.)

that the ALJ impermissibly substituted her own medical conclusions for those of a treating physician. (*Id.* at ECF 3–4.)

In rejecting Dr. Weidershine's medical opinion, the ALJ reasoned as follows:

> The only opinion in the record from a treating source is Dr. Weidershine's [July] 2016 letter, which states in conclusory terms that the claimant's limited focus, heightened anxiety, panic attacks, and low frustration tolerance would considerably impair his ability to function in a work setting (Ex. B12F). The Social Security Administration recognizes a 'treating physician' rule of deference to the opinion of the physician who has engaged in the primary treatment of claimant, but only if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. (20 CFR 404.1257(d)(2); SSR 96-2p). However, Dr. Weidershine's letter does not provide any specific limitations and is more in the nature of a vocational opinion on an issue reserved to the Commissioner than a medical opinion. In determining the claimant's mental residual functional capacity, I considered all of Dr. Weidershine's contemporaneous progress notes, including the treating social worker's records and the [New York Psychotherapy and Counseling Center ("NYPCC")][4] treatment plan reviews, as well as Dr. Weidershine's statement that the claimant is easily provoked, which I accommodated by limiting the claimant's dealing with the public.

(Tr., Dkt. 8, at ECF 33.)

The Court concludes that the ALJ's rejection of Dr. Weidershine's July 2016 medical opinion was not supported by substantial evidence. Because Dr. Weidershine was Plaintiff's treating physician,[5] the ALJ was required to defer to his opinion unless she justified her failure to do so on the record by addressing certain criteria. As the Second Circuit has explained:

---

[4] NYPCC is the New York Psychotherapy and Counseling Center where Dr. Weidershine worked. (Tr., Dkt 8, at ECF 29.)

[5] Under the "treating physician rule," an ALJ must defer "to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2009) (quotation omitted). Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim because the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); 20 C.F.R. § 404.1520(c). Because Plaintiff filed his SSI application on April 9, 2014, the ALJ was required to apply the treating physician rule. *See* 20 C.F.R. § 505.1520(c).

5

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives claimant's treating source's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citations and quotations omitted).

The Court concludes that remand is required to allow the ALJ to specifically identify and consider the aforementioned factors as they relate to Dr. Weidershine's medical opinion. To the extent the ALJ is unable to engage in an analysis under the five factors on the record before her, she must affirmatively consult with Dr. Weidershine in order to develop a record that enables her to do so. As courts in this Circuit have held, "the ALJ must make every reasonable effort to help an applicant get medical reports from his medical sources" and "must seek additional evidence or clarification when the report from the claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quotations and brackets omitted); *see also* 20 CF.R. § 416.927(d)(2).

To the extent the ALJ found that Dr. Weidershine's opinion that "claimant's limited focus, heightened anxiety, panic attacks, and low frustration tolerance would considerably impair his ability to function in a work setting" was "conclusory," she should have sought more evidence or information from the doctor to clarify the basis of his opinion, rather than summarily dismiss it. Furthermore, although the ALJ explained that, in determining Plaintiff's mental RFC (and rejecting Dr. Weidershine's July 2016 letter), she "considered all of Dr. Weidershine's

contemporaneous progress notes, including the treating social worker's records and the NYPCC treatment plan reviews, as well as Dr. Weidershine's statement that the claimant is easily provoked," she did not explain how these other records undermined Dr. Weidershine's conclusion in July 2016 that Plaintiff's mental health conditions "would considerably impair his ability to function in a work setting." (Tr., Dkt. 8, at ECF 33.) Such an elaboration was required. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("[W]here we are unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ, we will not hesitate to remand for further findings or a clearer explanation for the decision." (quotations omitted)). In fact, a review of the progress notes and reports that the ALJ says she considered reveals that most of these records pre-date Dr. Weidershine's July 2016 assessment or do not, in fact, undermine his conclusion that Plaintiff's ability to function in a work setting was "considerably impaired" by his mental conditions. (*See, e.g.*, Tr., Dkt. 8, at ECF 29–30 (describing NYPCC progress notes as showing that "the claimant reported fluctuating moods, including anxiety, depression, sleep and appetite disturbances, irritability, and agitation" and revealed that "the claimant sometimes presented with anxious or depressed mood and restricted affect [and] at other times, [] exhibited euthymic mood. . . . ).)

The ALJ's consideration of the opinions of other medical professionals in arriving at her conclusion that Dr. Weidershine's opinion was not entitled to deference suffers from the similar defects.[6] Two of these medical opinions were given *two years* before Dr. Weidershine's July 2016

---

[6] In determining Plaintiff's RFC, the ALJ (1) gave great weight to Dr. Chitoor Govindaraj's July 2014 opinion that Plaintiff had no exertional or other physical limitations at that time; (2) gave some weight to Dr. Chaim Shtock's August 2016 opinion that the claimant had a gait dysfunction and mild to moderate exertional and postural limitations at that time; (3) gave substantial wait to Dr. Ram Ravi's August 2016 opinion that Plaintiff had at most mild exertional limitations; (4) gave some weight to Dr. Brickell Quarles' July 2014 opinion that Plaintiff had mild limitations in concentration and short term memory; and (5) gave some weight to Dr. Lucy Kim's

assessment (Tr., Dkt. 8, at ECF 32–33), rendering them of limited probative value in rebutting the opinion of Dr. Weidershine, as Plaintiff's treating physician. *See Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 471 (W.D.N.Y. 2018) (remanding where ALJ relied on medical opinion "rendered nearly five years before the ALJ's decision"). Of the three remaining medical opinions cited by the ALJ, only one of those opinions explicitly addressed Plaintiff's mental health. (Tr., Dkt. 8, at ECF 32–34.) While there was one post-July 2016 opinion given by a consultative Psy.D., Dr. Kim, indicating that Plaintiff had only "mild limitations in attention/concentration and no other limitations" (*id.* at ECF 33), given the seeming conflict between Dr. Kim's consultative opinion and that of Plaintiff's treating psychiatrist, Dr. Weidershine, a month earlier, the ALJ had the duty to resolve the conflict by obtaining more information from Dr. Weidershine. To the extent the ALJ determined that these medical opinions collectively sufficed to rebut Dr. Weidershine's opinion as Plaintiff's treating physician, she "substitute[d] [her] own expertise or view of the medical proof for those" of a medical professional and committed legal error. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see Hillsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

Accordingly, the Court finds that remand is warranted to allow the ALJ, *inter alia*, to: (1) supplement and further develop the record as necessary (*e.g.*, to identify the bases of Dr. Weidershine's July 2016 opinion); (2) reconsider Dr. Weidershine's opinion with proper deference owed a treating source and in the context of the entire record; and (3) if appropriate, to explain

---

August 2016 opinion that Plaintiff had mild limitations in attention and concentration and no other limitations. (Tr., Dkt. 8, at ECF 32–34.)

with specificity the ALJ's consideration of the factors set forth in *Halloran*, 362 F.3d at 32, to justify any decision not to give substantial weight to Dr. Weidershine's opinion as Plaintiff's treating psychiatrist.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

        SO ORDERED.

        */s/ Pamela K. Chen*
        PAMELA K. CHEN
        United States District Judge

Dated: March 29, 2019
      Brooklyn, New York